**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**(Alexandria Division)**

| | |
|---|---|
| ATTARD INDUSTRIES, INC., | ) |
| | ) |
| *Plaintiff,* | ) Case No.: 1:10-cv-121 |
| | ) |
| *v.* | ) Judge Anthony J. Trenga |
| | ) |
| UNITED STATES FIRE INSURANCE | ) Magistrate Judge T. Rawles Jones, Jr. |
| COMPANY, | ) |
| | ) |
| *Defendant.* | ) |

## MEMORANDUM IN SUPPORT OF
## ATTARD INDUSTRIES, INC.'S MOTION FOR PARTIAL SUMMARY JUDGMENT

Plaintiff Attard Industries, Inc. ("Attard"), by counsel, files this Memorandum in support of its Motion for Partial Summary Judgment against Defendant United States Fire Insurance Company ("US Fire").  By filing this motion, Attard seeks narrow the issues in order to shorten and streamline the jury trial that is scheduled to begin on August 23, 2010 by eliminating affirmative defenses that are unsupported by any evidence or for which US Fire is not entitled to assert in this action and by quantifying those invoices for which there is no dispute as to the quantum of such invoices between the parties.

### STANDARD OF REVIEW

A moving party is entitled to summary judgment under Fed. R. Civ. P. 56 by showing that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Atlas Copco AB v. Atlascopcoirain.com, 533 F.Supp.2d 610, 612 (E.D.Va. 2008).  Once a motion for summary judgment is properly submitted, the nonmoving party has the burden of showing that a genuine dispute regarding a material fact exists. Matsushita Elec.

Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87, 106 S. Ct. 1348, 89 L.Ed.2d 538 (1986). The nonmoving party is required to show the existence of a genuine issue of material fact by submitting its own affidavits, or by depositions, answers to interrogatories, or admissions, designating specific facts that show that there is a genuine issue for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 324, 106 S. Ct. 2548, 91 L.Ed.2d 265 (1986) (citing Fed. R. Civ. P. 56(e)).

Based upon these standards, the record herein, and the following statement of undisputed facts, there is no dispute that Attard is entitled to judgment as matter of law on US Fire's claimed Affirmative Defenses Nos. 3, 7, 9, 13, 15, 16, 17, 18 and 19. In addition, Attard is entitled to partial summary judgment on the quantum on the undisputed change orders listed herein.

## STATEMENT OF UNDISPUTED FACTS

1.      On December 16, 2002, Jett Mechanical, Inc. ("Jett") entered into a contract with Turner Construction, Inc. ("Turner") to provide labor and materials to perform mechanical and plumbing work to the Package 6 Main Terminal People Mover Station construction project at the Washington Dulles International Airport (the "Project"). Complaint, [Doc. No. 1], ¶ 5; Amended Answer, [Doc No. 10], ¶ 5.

2.      On January 21, 2003, Attard entered into a subcontract with Jett to furnish and install certain mechanical ductwork and perform related work on the Project. Complaint, ¶ 7; Amended Answer, ¶ 7.

3.      On May 12, 2004, US Fire issued Labor and Material Payment Bond No. 6102441216 to guarantee payment for labor and materials supplied to Jett on the Project. Complaint, ¶ 9; Amended Answer, ¶ 9. This bond provides the manner in which recovery may be sought against US Fire:

>        The above named Principal and Surety hereby jointly and severally agree with the Obligee that every Claimant, as herein defined, who has not been paid in full before the expiration of a period of ninety (90) days after the date on which

the last of such Claimant's work or labor was done or performed, or materials were furnished by such Claimant, may sue on this bond fur the use of such Claimant, prosecute the suit to final judgment for such sum or sums as may be justly due Claimant, and have execution thereon.  The Obligee shall not be liable for the payment of any costs or expenses of any such suit.

US Fire Payment Bond No. 6102441216, p. 2, ¶ 2, [Doc. No. 1-1].

4.      On December 29, 2004, US Fire issued a second bond, Labor and Material Payment Bond No. 6102454176. Complaint, ¶ 10; Amended Answer, ¶ 10.  This second bond contained the identical language obligating US Fire to pay for material and labor supplied to Jett on the Project as the first bond. US Fire Payment Bond No. 6102454176, p. 2, ¶ 2 [Doc. No. 1-1].

5.      Attard is a proper claimant under the Payment Bonds.

6.      Attard provided materials and labor to the Project, and more than ninety (90) days have elapsed since Attard last performed such work or supplied materials to the Project.

7.      On February 12, 2010, Attard filed the present suit against US Fire seeking recovery under the two payment bonds for Jett's alleged failure to pay for labor and materials provided to the Project. *See* Complaint.

8.      In its Amended Answer, US Fire asserts twenty-two (22) alleged affirmative defenses as a basis for denying recovery to Attard under the payment bonds.  This motion seeks summary judgment in favor of Attard on the following particular affirmative defenses:

3.      Attard has waived its right to recover against USFIC under Virginia Code § 49-25, *et seq*., by failing to join Jett Mechnical, Inc., the bond principal, in this action.

7.      Attard's claims are barred by its failure to provide proper and timely notice of its claims pursuant to the terms of the applicable contract.

9.      Attard's claims are barred by the applicable statute of limitations and/or bond limitations period.

13.     Attard's claims are barred by the doctrine of waiver.

15.     Attard's claims are barred by release.

16.     Attard's claims are barred by accord and satisfaction.

17.     Attard's claims are barred by the doctrines of set-off and recoupment.

18.     Attard's claims are barred by the doctrine of unclean hands.

19.     Attard's claims are barred by its failure to satisfy all conditions precedent to recovery.

[*See* Doc. 10].

### *The Loudoun County Circuit Court Actions.*

9.     On February 22, 2010, Attard filed a lawsuit against Jett in the Circuit Court of Virginia for Loudoun County.  A true copy of that Complaint is attached hereto as **Exhibit 1**.[1]

10.     Also on February 22, 2010, Jett filed a lawsuit against Attard in the Circuit Court of Virginia for Loudoun County seeking recovery for the costs it allegedly incurred to correct and complete Attard's work on the Project and served that lawsuit on counsel for Attard.  A true copy of that Complaint is attached hereto as **Exhibit 2**.

11.     On March 3, 2010, US Fire forwarded a letter to Attard requesting that Attard join Jett as a defendant to this lawsuit, a true copy of which is attached hereto as **Exhibit 3**.

### *Admissions by US Fire's corporate designee and answers to interrogatories.*

12.     On May 11, 2010, Attard served its Amended Notice of Deposition of Defendant United States Fire Insurance Company, a true copy of which is attached hereto as **Exhibit 4**. Pursuant to Fed. R. Civ. P. 30(b)(6), Attard requested that US Fire designate a representative to testify regarding a number of subjects, including the "factual basis for each of the Affirmative Defenses listed in US Fire's Amended Answer." **Exhibit 4**, p. 2, No. 4.

---

[1]     Attard requests that this Court take judicial notice of the complaint filed in Loudoun County Circuit Court, Case No. CL 60207, by Attard against Jett and Orange Sheet Metal, LLC ("Orange"), as well as judicial notice of the complaint filed by Jett against Attard in the same state court, Case No. CL 60204, a copy of which is attached as Exhibit 2 hereto.

13.     In response to this properly notice deposition, US Fire advised Attard that it would designate two witnesses responsive to the scope identified by Attard in its notice.

14.     On May 18, 2010, Attard took the deposition of one of US Fire's Fed. R. Civ. P. corporate designees, Lesley Neal Foxhall.  Mr. Foxhall was designated to provide testimony regarding the factual basis for each of US Fire's affirmative defenses. *See* **Exhibit 5**, "Deposition Transcript of Lesley Neal Foxhall," ("Foxhall Deposition"), p. 14:6-15:12.

15.     On June 8, 2010, Attard took the deposition of US Fire's other corporate designee, Thomas Acchione. *See* **Exhibit 6**, "Deposition Transcript of Thomas J. Acchione," ("Acchione Deposition").

16.     US Fire testified that it had no knowledge of any facts supporting its Affirmative Defense No. 7 which asserts that "Attard's claims are barred by its failure to provide proper and timely notice of its claims pursuant to the terms of the applicable contract."  US Fire's testimony was:

> Q.     What facts do you have to support Number 7 that Attard's claims [are barred] by failure to give proper and timely notice?  What facts, if any, do you know that support that?
>
> A.     There is a defense available under the terms of the bond – if a claimant fails to give proper and timely notice of its claim.  At the present time, I'm not aware that Attard has—has failed to give proper and timely notice, but I've retained counsel to determine whether it has.   And I haven't specifically addressed that question, but this may be an affirmative defense that—that we would assert now and abandon if we find that there's no basis for it as we approach trial.

**Exhibit 5**, pp. 158:11-159:2.  US Fire further testified:

> Q.     But as of today, based upon your understanding, there are no facts then that support this particular Affirmative Defense Number 7, correct?
>
> A.     I am not aware of any.  That's correct.

Id., p. 161:5-8.

17.     US Fire also testified that it had no knowledge of any facts supporting its

Affirmative Defense No. 9.   US Fire testified:

> Q.     Let's talk about Number 9.  This one says Attard's claims are barred by the applicable statute of limitations and/or bond limitations.  Do you see that?
>
> A.     Yes.
>
> Q.     Please tell me you're not relying on that affirmative defense.
>
> A.     Well, we would rely on it if it were available.  I'm talking about the one-year state limitation for when the principal ceased work on the job.  The principal's still working on the job, so it seems unlikely that would be pleaded.
>
> ***
>
> Q.     So I guess what I don't understand is that the time this complaint was filed in February of this year, there is not statute of limitations that bars it, is there?
>
> A.     There's none that I'm aware of, but, again, these pleadings are prepared by counsel, and they may have thoughts that have a set of facts in mind which don't occur to me.
>
> Q.     That's fine.
>
> A.     I don't want to waive anything.
>
> Q.     I got you.  In other words, you just don't know what the facts are?  Yes?
>
> A.     Yes.  Correct.

Id., pp. 163:21-165:11.

18.     US Fire testified that it had no knowledge of any facts supporting its Affirmative

Defense No. 13.   US Fire testified:

> Q.     All right.   What about the Doctrine of Waiver, Affirmative Defense Number 13?  What facts do you have to support that Attard's claims by the – are barred by the Doctrine of Waiver, if any?
>
> A.     Well, I don't know the specific facts.  I think we'd probably rely on—on—on Tom Acchione to tell us what facts would support a conclusion that Attard had waives it right to pursue a claim for some reason or another by some action that it took.
>
> Q.     So Tom was – Tom –

A.      Tom would probably develop the facts to support that legal defense.

Q.      Well, Tom was not designated in response to this particular area.  So my questions is, you today don't know of any facts to support this affirmative defense for Doctrine of Waiver, correct?

A.      I don't know of any specific facts, but there may be specific facts.

Q:      I got it.  It's the same thing as mitigation damages.  There may be facts, but you don't know what they are today?  Yes?

A.      Right.

Id., pp. 169:6-170:5.

19.     US Fire testified that it had no knowledge of any facts supporting its Affirmative

Defense No. 15, which alleged that "Attard's claims are barred by release."  US Fire testified:

Q.      What about the facts supporting Attard's claims being barred by release?  What release?  What facts support that claim?

A.      As I understand it, each time a payment is made to a subcontractor by Jett, a release is obtained.

Q.      Oh, are you saying that there's a release out there that Attard waived its claim?

A.      I'm saying that there's a release that's signed by Attard in conjunction with its receipt of a payment by Jett.

Q.      Is it your contention that Attard's claims in this action are barred by a signed release, or this just a defense that's available to you?

A.      It's a defense that's available to us, and there are release out there.  There are specific releases that they've signed.

Q.      Are there specific releases that bar these claims?

A.      There may be.  I don't know.

Q.      I'm just trying – these are – are you just trying to keep this issue open?

A.      Yes.

Q.      Okay.  So you don't know any facts today as to whether Attard's claims are, in fact, barred by release or not; is that true?

A.      Yes.

Id., pp. 171:17-172:21.

20.      US Fire also testified that it was unaware of any facts supporting its Affirmative

Defense No. 16, relying upon accord and satisfaction.  US Fire testified:

Q.      What facts do you have to support that Attard's claims are barred by accord and satisfaction, if any?

A.      That they presented claims as they proceeded with the work, that they were paid on those requests for payment, and that they then — those requests for payments have been satisfied.  So to the extent that they've requested payment, their payments have been — their — that that's accord and satisfaction.  Yes.

Q.      Okay.  This one it seems like you go into a little bit more detail than the others.  Do you have any facts to support that Attard was paid some amounts for a particular claim that's claiming that would support this affirmative defense, or is this just —

A.      Well, they were paid as they performed work on the project.  They submitted progress payments and they were paid on those progress payments.

Q.      Okay.  That's a progress payment.   Progress payment is not a full and final payment.  Do you agree with me?

A.      Correct.

Q.      So I'm trying to figure out, is this just something you're trying to keep open as a possibility or do you have specific facts that Attard's claims, yes, are barred by accord and satisfaction, this is it?

A.      Each time they accepted a payment, there was an accord and satisfaction to that point.  I don't know all of the facts that we may be relying upon to support this defense, but we want to preserve it.

Q.      I guess what I'm trying to figure out, is this just one you're just trying to reserve, or you know that—are you saying that every time you got paid a progress payment, you waived all claims?  I don't understand.  Was this just one you're trying to keep open just in case?

A.    Well, when you're—when you receive payment on a progress payment request, normally you sign a release and accept that as what you're entitled to to that point.

Q.    Show me a release that Attard signed.

A.    I don't know.

Q.    Have you seen a release that Attard signed that you —

A.    No.

Q.    So this accord and satisfaction argument is no different than the facts that you're trying to keep open for release barred by payment, all those other things, you just want to reserve the right?  Am I right?

A.    To the extent that they're justified by the facts.

Q.    Yeah.  And if they're not justified, you'll abandon them prior to trial?  Is that true?

A.    Yes.

Id., pp. 173:1-175:11

21.    US Fire also testified that it was unaware of any facts supporting its Affirmative

Defense No. 18.  US Fire testified:

Q.    What about Affirmative Defense Number 18?  What facts do you have to support the claim that Attard's claims are barred by the Doctrine of Unclean Hands?

A.    I don't know of any facts, but again, I haven't—I haven't reviewed the facts as closely as others have, as Tom Acchione has, for example.  So there may be documents that—that are revealed in the courts of our investigation which is not concluded yet which justify the assertion of that doctrine.  It's an equitable doctrine.  We wouldn't want to waive it by not asserting it.

Q.    I get the sense that you just don't—you don't want to say one way or the other.  This may be a claim for affirmative defense, I sense, you may abandon prior to trial?

A.    Yes.

Q.    Okay.  You don't know any facts today that support it; yes?

Page 9

A.    I don't personally, no.

Q.    Well, you're here not personally because you've only been involved in the job the past 20 hours.  We're talking about on behalf of U.S. Fire.

A.    Yes.  U.S. Fire has the right to conclude its investigation.

Id., pp. 181:5-182:7.

22.    US Fire also testified that it was unaware of any facts supporting its Affirmative Defense No. 19, which states that "Attard's claims are barred by its failure to satisfy all conditions precedent to recovery."  US Fire testified:

Q.    Tell me all facts that support your affirmative defense — U.S. Fire's affirmative defense that Attard's claims are barred by its failure to satisfy all conditions precedent.  What are you talking about there, if anything?

A.    I'm not aware of specific facts which support that — that affirmative defense, but there may be facts that we'll develop before we got to trial in the course of discovery in this matter which would justify raising it.

Id., pp. 182:16-183:3.

23.    US Fire also testified that Jett is an ongoing business and that it is financially solvent:

Q.    How do you define solvent?

A.    They're an ongoing concern?

Q.    So Jett is an ongoing concern, then, so they're solvent?

A.    In my mind, yes.

**Exhibit 6**, Acchione Deposition, p. 166:15-19.  US Fire further testified:

Q.    Has Jett advised U.S. Fire that they are insolvent?

A.    No.
                              ***
Q.    Was there an instance before then—before that time where Jett got mildly offended that people were claiming it was insolvent or financially unsound?

A.      Yes.  And I think they would do so today.

**Exhibit 5**, Foxhall Deposition, pp. 264:20-265:12.

24.     US Fire has received collateral to protect it from any losses due to claims under

its bonds.  US Fire testified:

> A.      We have made demands, of course, on — demand on the indemnitees —
> pardon me, indemnitors to hold us harmless, and we have entered into collateral
> security agreements with them secured by their claims in connection with this
> project against Turner and also secured by certain real estate that they own.
>                                             ***
> Q.      Well, how much collateral have you asked for?
>
> A.      Well, the — we've just taken items of collateral and we haven't asked for
> a specific amount.  We've said, what do you have?  They've had some real
> property that we asked them to pledge.  And they also have the claims that
> they've presented to Turner in connection with this project.

**Exhibit 5,** Foxhall Deposition, 262:16-264:7.

25.     On July 9, 2010, US Fire served its supplement answers to Attard's first set of

interrogatories, a copy of which is attached hereto as **Exhibit 7**.

26.     Interogatory No. 5 and US Fire's answer thereto is set out below:

> **<u>INTERROGATORY NO. 5:</u>**  State the factual bases for each and
> every affirmative defense you have asserted in this matter, and identify all
> witnesses and documents, including emails, that support each particular
> affirmative defense.
>
> <u>Objection:</u>   USFIC objects to this contention interrogatory as
> premature at this stage of discovery and because corrective work remains
> ongoing.
>
> <u>Answer:</u>
>
> Subject to this objection, the factual basis for each and every
> affirmative defense asserted by USFIC in this matter is as follows:
>
> Attard has failed to properly support its entitlement to payment in
> this case.  Attard was terminated by Jett for default, in part, for: providing
> insufficient quality and inadequate quality of manpower such that it

materially impeded the work of Jett and other trades; providing inadequate supervision in the execution of its work; failing to cooperate with Jett and other trades in the performance of its Subcontract obligations; and performing deficient work on the Project.  Attard's deficient work on the Project includes, but is not limited to, the following: 1) installation of incorrect duct sizes; 2) installation of incorrect duct sound liner and failure of duct sound liner; 3) duct work installed in incorrect locations; 4) incorrect installation of spiral duct; 5) incorrect installation of fire dampers; 6) incorrect installation of duct smoke detectors; 7) failure to properly protect duct work before and after installation; 8) incorrect duct supports; 9) insufficient amounts of duct supports; 10) incorrect installation of duct flex connectors; 11) improper sealing of work; 12) incorrect/missing layout of duct openings in concrete and block walls; 13) incorrect duct transition fittings to equipment (does not meet SMACNA HVAC Duct Construction Standards requirements); and 14) failure to protect the duct or keep it clean.  Attard also failed to supply the following items as required under its Subcontract: completion of supply air, return air, exhaust air and outside duct work and installation of equipment. Attard has not presented sufficient facts to USFIC to contest its termination.

Attard appears to have failed to comply with several provisions of its Subcontract, including, but not limited to, Articles: 3.1.1, 3.4.1, 4.1.1, 4.1.2, 4.1.4, 4.1.5, 4.5.1, 4.6.4, 5.3, 6.3.2, 6.3.1, 7.2.1.  Attard appears to have also breached its Subcontract with Jett by not cooperating with Jett in scheduling and performing its work, and by causing unreasonable conflicts and interference in Jett's work and the work of other trades such that it jeopardized the timely completion of work by Jett and others.

Attard appears to have failed to timely submit documentation to support its additional costs, extension of time and damages for delays. Attard failed to perform within contract specifications, which continues to subject Jett and USFIC to backcharges from Turner and the owner regarding Attard's scope of work.  Attard frequently failed to submit its application for payment to Jett by the 20th day of each month and in many instances failed to provide any pricing data, and backup to support its costs associated with the project.  Attard has also failed to comply with its contract by making a jury demand in this action—a right it expressly waived in the Subcontract.

Because Attard defaulted on its obligations, the Subcontract expressly permits Jett to backcharge Attard for the costs of completing its work and for the costs of curing its defective work.  USFIC's investigation into the extent of Jett's backcharges against Attard is ongoing and has yet to be completed. As of December 2009, the total costs incurred by Jett due to Attard's apparent faulty performance exceeded $4.5 million dollars.

Attard failed to mitigate its damages by: not procuring its ductwork; not keeping its ductwork clean; by failing to deliver ductwork; by hiding ductwork and materials; and by causing unnecessary waste and expense to Jett and other trades.

Attard has also breached its statutory obligations. Virginia Code § 49-25 gives a surety the right to demand in writing that a claimant institute suit against the surety's principal. Section 49-26 provides that failure to join the principal 30 days after demand has been made bars the claimant from recovering against the surety. By letter dated March 2, 2010, and pursuant to its rights under § 49-25, USFIC demanded that Attard add Jett to this suit. To date, Attard has not added Jett as a defendant. Therefore, because Jett has not been added to this suit, Attard has waived its right to recover against USFIC under Virginia Code § 49.25, *et seq.*

Some of Attard's claims may be waived or released because Attard signed release instruments periodically during the project. Attard also may have already been paid for some of its claims, and to the extent Turner or the owner did not approve Attard's request for payment, Attard's claims are barred under the subcontract. To the extent any of Attard's claims have been approved by the owner and payment has been accepted by Attard, Attard's claims for additional amounts are barred. Moreover, several of Attard's claims may have been settled with the project Owner, which would bind Attard to the amounts accepted by the Owner.

USFIC further refers Attard to USFIC's Rule 26(a)(2) Expert Disclosures and its expert reports, produced on July 7, 2010, and incorporates the contents of those materials by reference herein.

*See* **Exhibit 7**, pp. 6-8.

### *US Fire's admission as to the quantum of particular invoices.*

27.     In this case, Attard seeks payment for a number of invoices and pay applications

for a total amount of $6.1 Million, most of which are admittedly in dispute and beyond the scope

of summary judgment.[2]   Attard does not agree with US Fire's analysis on all invoices, but as the

---

[2]     On a global scale, US Fire admits that Attard's "best case" scenario analysis is that there is $205,456 due under the base contract and $1,362,919 due for extra work, for a total admitted amount of $1,568,375, subject to certain alleged backcharges and set-offs. *See* Robert

following table illustrates, there are a number of invoices where both parties agree on the amount, or quantum, for that particular invoice.

28.     The following table summarizes the position of both Attard and US Fire as to the various invoices that are the subject of this action under the payment bonds.  Each invoice is referenced by date and either designated as "SOV6" (which stands for schedule of values for Package 6 for base contract work) and "PCO" (or potential change order) for extra work on the Package 6 Project. US Fire's position on each invoice was summarized in its own table that was attached as Exhibit A to it expert report of Robert C. Jett, a copy of which is attached hereto as **Exhibit 8**.

| Invoice No. | Attard's Claimed Amount | US Fire's analysis of the Amount Due | Difference |
|---|---|---|---|
| **Base Contract Work** | | | |
| 02/19/08/SOV6 | $57,850 | $57,850 | $0 |
| 04/21/08/SOV6 | $52,540 | $52,540 | $0 |
| 05/16/08/SOV6 | $76,010 | $76,010 | $0 |
| 06/20/08/SOV6 | $134,179 | $19,056 | $115,123 |
| **Subtotal of Base Contract:** | **$320,579** | **$205,456** | |
| **Changed Work** | | | |
| 10/19/04/PCO1139 | $602 | $0 | $602 |
| 4/19/05/PCO1217 | $71 | $0 | $71 |
| 8/18/05/PCO1039 | $5,512 | $0 | $5,512 |
| 10/19/05/PCO1328 | $2,010 | ($398) | $2,408 |
| 1/19/06/PCO1424 | $11,435 | $11,435 | $0 |
| 3/17/06/PCO992 | $5,000 | $5,000 | $0 |
| 3/17/06/PCO1345 | $3,961 | $0 | $3,961 |
| 5/19/06/PCO772 | $17,885 | $17,885 | $0 |
| 7/20/06/PCO1566 | $38,233 | $31,500 | $6,733 |
| 7/20/06/PCO1345 | $2,231 | $0 | $2,231 |
| 8/18/06/PCO1568 | $36,483 | $29,000 | $7,483 |
| 8/15/06/PCO1566 | $2,424 | $0 | $2,424 |
| 9/26/09/PCO1572 | $1,993 | $0 | $1,993 |
| 9/26/06/PCO1566 | $1,651 | $0 | $1,651 |
| 10/20/06/PCO1316 | $94,445 | $0 | $94,445 |
| 11/30/06/PCO1165 | $258,500 | $214,500 | $44,000 |

Jett's expert report, page 4, and Exhibit A thereto, a copy of which is attached hereto as **Exhibit 8**.

| Invoice No. | Attard's Claimed Amount | US Fire's analysis of the Amount Due | Difference |
|---|---|---|---|
| 12/01/06/PCO1529 | $5,516 | $0 | $5,516 |
| 1/08/07/PCO1654 | $6,335 | $5,600 | $735 |
| 1/20/07/PCO1345 | $52,887 | $16,500 | $36,387 |
| 1/22/07/PCO843 | $1,674 | ($5,330) | $7,004 |
| 1/22/07/PCO1345 | $1,115 | $0 | $1,115 |
| 4/19/07/PCO1286 | $23,100 | $23,100 | $0 |
| 4/19/07/PCO1243 | $8,070 | ($7,500) | $15,570 |
| 4/19/07/PCO1470 | $6,262 | $0 | $6,262 |
| 7/23/07/PCO1682 | $6,454 | $5,615 | $839 |
| 7/20/07/PCO1713 | $21,200 | $21,200 | $0 |
| 7/20/07/PCO1609 | $2,886 | $0 | $2,886 |
| 8/10/07/PCO1903 | $1,978 | $1,978 | $0 |
| 8/10/07/PCO1878 | $2,328 | $2,328 | $0 |
| 8/10/07/PCO1848 | $12,875 | $10,800 | $2,075 |
| 8/10/07/PCO1805 | $6,461 | ($5,000) | $11,461 |
| 1/19/08/PCO2123 | $58,272 | $0 | $58,272 |
| 1/19/08/PCO1953 | $26,671 | $0 | $26,671 |
| 1/21/08/PCO2118 | $11,695 | $4,185 | $7,510 |
| 1/21/08/PCO2060 | $28,578 | $13,822 | $14,756 |
| 1/18/08/PCO2067 | $71,509 | $35,604 | $35,905 |
| 4/11/08/PCO1149 | $1,667,485 | $828,181 | $839,304 |
| 5/27/08/PCO2322 | $17,859 | $12,565 | $5,294 |
| 5/31/08/PCO2021 | $44,412 | $17,765 | $26,647 |
| 6/3/08/PCO2344 | $30,530 | $4,947 | $25,583 |
| 6/13/08/PCO2306 | $1,871 | $374 | $1,497 |
| 6/16/08/PCO2370 | $18,677 | $10,272 | $8,405 |
| 6/21/08/PCO2291 | $35,000 | $0 | $35,000 |
| 6/21/08/PCO2108 | $75,000 | $56,991 | $18,009 |
| 6/21/08/PCO2415 | $15,000 | $0 | $15,000 |
| 6/25/08/SDRWK | $15,203 | $0 | $15,203 |
| 7/02/08/CN489 | $914,698 | $0 | $914,698 |
| 7/02/08/P1839 | $345,822 | $0 | $345,822 |
| 9/26/08/RENT | $42,858 | $0 | $42,858 |
| 10/01/09/PHASE 3 | $1,733,035 | $0 | $1,733,035 |
| **Subtotal of Changed Work:** | **$5,795,752** | **$1,362,919** | **$4,432,833** |
| | | | |
| **TOTAL:** | **$6,116,331** | **$1,568,375** | **$4,547,956** |

29.     Of these invoices and payment applications, there are several invoices that are not in dispute and that are appropriate for partial summary judgment on the issue of quantum only, as set out below:

| Invoice No. | Attard and US Fire Agree as to the quantum of the  following Invoices |
|---|---|
| **Base Contract Work** | |
| 02/19/08/SOV6 | $57,850 |
| 04/21/08/SOV6 | $52,540 |
| 05/16/08/SOV6 | $76,010 |
| **Subtotal of Agreed Base Contract Work:** | **$186,400** |

| **Changed Work** | |
|---|---|
| 1/19/06/PCO1424 | $11,435 |
| 3/17/06/PCO992 | $5,000 |
| 5/19/06/PCO772 | $17,885 |
| 4/19/07/PCO1286 | $23,100 |
| 7/20/07/PCO1713 | $21,200 |
| 8/10/07/PCO1903 | $1,978 |
| 8/10/07/PCO1878 | $2,328 |
| **Subtotal of Agreed Changed Work:** | **$82,926** |
| **TOTAL of Agreed Invoices:** | **$269,326** |

**ARGUMENT**

In US Fire's Amended Answer to the Complaint, [Doc No. 10], US Fire asserts twenty-two separate affirmative defenses.  Investigation and discovery concerning the bases for these twenty-two affirmative defenses has revealed that many of these affirmative defenses simply have no basis in law or fact and therefore summary judgment in favor of Attard and against US Fire on these affirmative defenses is warranted.  With respect to the individual invoices (for both base contract and extra work), the parties agree on the quantum of 10 individual invoices.

I.   **Attard filed an independent lawsuit against Jett prior to US Fire's demand to Attard that Jett be joined in this action Motion for Partial Summary Judgment and Affirmative Defense No. 3 should be struck.**

With respect to Affirmative Defense No. 3, US Fire asserts that Attard has waived its right to recover under Virginia Code § 49-25, *et seq.*, by failing to join Jett, the bond principal, in this action.  *See* Doc. No. 10, p. 4, No. 3.  Virginia Code § 49-25 states:

> The surety, guarantor or endorser, or his committee or personal representative, of any person bound by any contract may, if a right of action has accrued thereon, require the creditor or his committee or personal representative, by notice in writing, to institute suit thereon, and if he be bound in a bond with a condition, or for the performance of some collateral undertaking, he shall also specify in such requirement the breach of the condition or undertaking for which he requires suit to be brought. Such written notice shall also notify the creditor, his committee or personal representative, that failure to act will result in the loss of the surety, guarantor or endorser, his committee or personal representative as security for the debt in accordance with § 49-26.

VA. CODE ANN. § 49-25 (*emphasis added*).  Virginia Code § 49-26 states:

> If such creditor, or his committee or personal representative, shall not, within thirty days after such requirement, institute suit against every party to such contract who is resident in this Commonwealth and not insolvent and prosecute the same with due diligence to judgment and by execution, he shall forfeit his right to demand of such surety, guarantor or endorser or his estate, and of his cosureties and their estates, the money due by any such contract for the payment of money, or the damages sustained by any breach of the collateral condition or undertaking specified as aforesaid; but the conditions, rights and remedies against the principal debtor shall remain unimpaired thereby.

VA. CODE ANN. § 49-26 (*emphasis added*).

These code sections do not provide the basis for any affirmative defense that US Fire may assert in this matter because it is undisputed that Attard had already instituted suit against US Fire's principal, Jett, prior to US Fire's purported § 49-25 demand letter being sent. This suit was filed on February 12, 2010. Statement of Undisputed Facts ("SOF"), ¶ 7. On February 22, 2010, Attard filed a separate lawsuit against Jett in the Circuit Court of Virginia for Loudoun County. SOF, ¶ 9. It was not until March 3, 2010 that US Fire sent its demand letter. SOF, ¶ 11.

Further, §49-25 does not suggest that a surety has the right to demand that a creditor join a principal to an existing lawsuit.[3] When interpreting Virginia statutes, courts are bound by the plain meaning of and are not free to add to or ignore language contained in those statutes. Idoux v. Estate of Helou, 279 Va. 548, 553, 691 S.E.2d 773, 775 (2010) (*citing* BBF, Inc. v. Alstom Power, Inc., 274 Va. 326, 331, 645 S.E.2d 467, 469 (2007)). Section 49-25 only speaks of a surety's demand that a creditor "institute suit" against the principal on the underlying secured contract or the creditor will lose the security provided by the surety pursuant to § 49-26. There is no basis upon which this Court may construe § 49-25 to require a creditor to join a principal in existing litigation instituted solely against the surety.

Moreover, Attard has been unable to find any Virginia case that has interpreted this code section to the type of payment bond that is the subject this pending lawsuit. Indeed, US Fire's obligation under the payment bond is a separate and independent obligation owed to all claimants. It is not conditioned upon the filing of any action against the bond principal and

---

[3]     Adding Jett as a defendant to this action would also destroy diversity jurisdiction as both Attard and Jett are Virginia corporations.

allows the claimant to file an action against the surety directly for all sums due.  The terms of the payment bond are fairly straight forward:

> The above named Principal and Surety hereby jointly and severally agree with the Obligee that every Claimant, as herein defined, w*ho has not been paid in full before the expiration of a period of ninety (90) days after the date* on which the last of such Claimant's work or labor was done or performed, or materials were furnished by such Claimant, *may sue on this bond fur the use of such Claimant, prosecute the suit to final judgment for such sum or sums as may be justly due Claimant, and have execution thereon.*

(SOF 3) (*emphasis added*).  Paragraph 3 of the payment bond lists the only conditions required to be met and all three conditions have either been satisfied or are not applicable to Attard's claims.  There are no other conditions required for recovery under the payment bond.

Since it is undisputed that Attard had already instituted litigation against Jett prior to US Fire's demand letter and because US Fire is not entitled to demand that Attard join Jett to existing litigation, there is no basis in law or fact for US Fire to assert this affirmative defense and this Court should enter summary judgment in favor of Attard and against US Fire on this issue.

## II.     US Fire is unaware of any factual basis for several of its claimed Affirmative Defenses.

As to Affirmative Defense Nos. 7, 9, 13, 15, 16, 18 and 19, US Fire has not provided specific facts supporting any of these affirmative defenses in its answer to interrogatories.  SOF, ¶ 26.  Further, US Fire's Rule 30(b)(6) corporate designee testified that US Fire is not aware of any facts supporting these same affirmative defenses.  SOF, ¶¶ 16-24.[4]   It is undisputed that

---

[4]      In addition, as to Affirmative Defense No. 19, US Fire failed to properly plead a failure to fulfill any conditions precedent.  In ¶ 20 of the Complaint, Attard affirmatively plead that all conditions precedent had been satisfied.  Under Fed. R. Civ. P. 9(c), US Fire was required to deny this allegation with particularity but failed to do so. *See* Doc. No. 10, p. 3, ¶ 20.

there are no factual bases for US Fire to assert these affirmative defenses and therefore summary judgment on these matters in favor of Attard and against US Fire is appropriate.[5]

### III.    US Fire may not assert Jett's affirmative claims against Attard that are the subject of a separate lawsuit by Jett in this action.

US Fire's Affirmative Defense No. 17 states, "Attard's claims are barred by the doctrines of set-off and recoupment."  This affirmative defense intends to assert certain claims that Jett, US Fire's principal, alleges it has against Attard as a defense to Attard's claims against US Fire. SOF, ¶ 26.  The general rule is that when a claimant sues a surety alone, the surety is not entitled to raise the principal's claims against the claimant as a defense. Wallace Hardware Co., Inc. v. Abrams, 223 F.3d 382, 402 (6th Cir.2000) (*citing* First Texas Serv. Corp. v. Roulier, 750 F.Supp. 1056, 1060 (D.Colo.1990); Rhode Island Hosp. Trust Nat'l Bank v. Ohio Casualty Ins. Co., 789 F.2d 74, 78 note 4 (1st Cir.1986)); Nat'l Surety Co. v. George E. Breece Lumber Co., 60 F.2d 847, 851 (10th Cir.1932) (*citations omitted*); Continental Group, Inc. v. Justice, 536 F.Supp. 658, 661 (D.Del.1982).  This rule is designed to protect the principal's claims, since it is unlikely that a surety indirectly involved in the occurrences giving rise to the claims is better suited to prosecute the claims than the principal, and in order to minimize litigation among the parties. Roulier, 750 F.Supp. at 1061; Continental Group, 536 F.Supp. at 661.

There are three exceptions to this general rule: (1) where the surety has taken an assignment of the claim or the principal has consented to the surety's use of the claim; (2) where both the surety and the principal are named as defendants; or, (3) where the principal is insolvent. Wallace Hardware, 223 F.3d at 402 (*citing* Continental Group, 536 F.Supp. at 661).  It is for the principal to determine what use he will make of his claims and a surety has no control

_____

[5]     The fact that these affirmative defenses were pled by US Fire without any factual basis violates Fed. R. Civ. 9(b)(2).

over the principal in this respect. <u>Continental Group</u>, 536 F.Supp. at 661 (*citing* <u>Elliot v. Brady</u>, 192 N.Y. 221, 85 N.E. 69, 71 (1908)).[6]

Jett is actively pursuing litigation directly against Attard for the alleged $4.5 million in "backcharges" it is asserting it incurred to correct and complete Attard's work on the Project. SOF ¶ 10.  Since Jett is asserting its own claims against Attard in separate litigation, it is evident that these claims have not been assigned to US Fire.  It is equally evident that Jett is not a named defendant in this action, and Jett is an ongoing concern who currently financially solvent.[7]  SOF ¶23.  Therefore, none of the exceptions apply to allow US Fire to assert Jett's claims against Attard in this matter and entry of summary judgment on this issue is appropriate as a matter of law.

### IV.   US Fire and Attard have agreed on the quantum for ten of the invoices that are the subject matter of this lawsuit.

Of the amounts claimed by Attard in this action, the parties have no dispute as to the quantum for ten specific invoices that together total $269,326.  *See* SOF 29.  Because the amount of these invoices are undisputed, summary judgment is appropriate for quantum only on these invoices.

---

[6]     If a principal consents to his surety's use of his claim, the principal forfeits his right to assert the claim in an independent action or to recover affirmatively for any amount by which his claim exceeds the amount of the claimant's claim. <u>Psaty & Fuhrman, Inc. v. Continental Casualty Co.</u>, 278 A.D. 159, 162-63, 103 N.Y.S.2d 849, 852 (1951); *see further* <u>Continental Group</u>, 536 F.Supp. at 662 (guarantor may assert claims of insolvent principal but may not make any affirmative recovery against creditor).

[7]     Even if Jett were insolvent, US Fire would be barred from asserting any of Jett's claims because US Fire is fully collateralized against any loss in this matter.  The general rule that a surety cannot assert its principal's claims unless the principal is insolvent does not apply where the surety is fully collateralized. <u>In re Braniff Airways, Inc.</u>, 42 B.R. 443, 453 note 5 (N.D.Texas.1984) (*citing* <u>In re Eastern Freight Ways, Inc.</u>, 577 F.2d 175, 180 (2nd Cir.1978)). Jett has collateralized US Fire by having its principals pledge certain real property to US Fire and by providing US Fire with a security interest in certain claims that Jett has against Turner Construction Co.  See SOF 24 & **Exhibit 5**, pp. 262:15-21; 263:22-264:7.

**CONCLUSION**

WHEREFORE, Plaintiff Attard Industries, Inc. respectfully requests entry of judgment in its favor and against Defendant United States Fire Insurance Company as to the foregoing Affirmative Defenses and quantum only for the ten specific invoices, and for any such other and further relief as this Court deems appropriate and just.

Dated:  July 28, 2010                                    Respectfully submitted,

                                    _____/s/_____
                                    David Hilton Wise
                                    Virginia bar number:  30828
                                    James P. Lukes
                                    Virginia bar number:  73752
                                    Attorneys for Plaintiff Attard Industries, Inc.
                                    WISE LAW, PLC
                                    11325 Random Hills Road, Suite 350
                                    Fairfax, Virginia 22030
                                    Phone:      703-934-6377
                                    Fax:          703-934-6379
                                    dwise@wiselawplc.com
                                    jlukes@wiselawplc.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 28th day of July, 2010, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

Fred A. Mendicino, Esq.
SEEGER FAUGHNAN MENDICINO, P.C.
21355 Ridgetop Circle, Suite 110
Dulles, Virginia 20166
mendicino@smflawfirm.com

Seth A. Robbins, Esq.
SEEGER FAUGHNAN MENDICINO, P.C.
2620 P Street, N.W.
Washington, DC 20007
robbins@sfmlawfirm.com

_____/s/_____
David Hilton Wise
Virginia bar number:  30828
Attorney for Plaintiff Attard Industries, Inc.
WISE LAW, PLC
11325 Random Hills Road, Suite 350
Fairfax, Virginia 22030
Phone:      703-934-6377
Fax:          703-934-6379
dwise@wiselawplc.com