IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| ATTARD INDUSTRIES, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 1:10cv121 (AJT/TRJ) |
| ) | |
| UNITED STATES FIRE INSURANCE CO.) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION

Defendant United States Fire Insurance Co. ("USFIC") seeks to enforce a jury waiver that Plaintiff Attard Industries, Inc. ("Attard") entered into as part of the contract with Jett Mechanical, Inc. ("Jett") that determines USFIC's liability to Attard under a payment bond USFIC issued to guarantee Jett's performance under that contract. The Magistrate Judge denied USFIC's Motion to Strike Attard Industries, Inc.'s Demand for a Jury Trial (Doc. No. 52) and USFIC has filed objections to that decision. For the reasons discussed below, the Court concludes that USFIC may not assert and enforce Attard's jury waiver as to Attard's claims against USFIC.

### I.  Facts

Turner Construction, Inc. ("Turner") received a prime contract on a construction project at the Washington Dulles International Airport known as the Dulles Airport Package 6 Main Terminal People Mover Station (the "Project"). On December 16, 2002, Jett entered into a subcontract with Turner to provide all mechanical and plumbing work on the Project (the "Principal Contract"). On January 21, 2003, Attard entered into a sub-subcontract with Jett to provide labor and materials on the Project (the "Subcontract").

The Subcontract specifically contains a jury waiver, stating that Jett and Attard both "expressly waive their right to a jury trial for any and all disputes arising out of or related to performance of this Subcontract" (Doc. No. 53, Ex. 1, "Subcontract" at Article 6.3.2). The Subcontract does not reference USFIC or the possibility that a surety will be obtained, or that payment bonds have been or will be issued in connection with Jett's performance. The Principal Contract, which is incorporated by reference in the Subcontract, does mention bonds, but states that bonds are not applicable to the contract.[1]

Following the execution of the Subcontract, Jett arranged for USFIC to issue, as surety, payment bonds with respect to Jett's performance in connection with the Project (the "Bonds"). The Bonds do not contain a similar jury waiver provision, incorporate the Subcontract by reference, or refer to the Subcontract.

On June 16, 2010, the Magistrate Judge ruled that the USFIC could not enforce the jury waiver in the Subcontract (Doc. No. 48). USFIC has objected to that decision pursuant to Fed. R. Civ. P. 72.

## II.    Standard of Review

"Review of a magistrate's . . . order, usually a non-dispositive matter, is properly governed by the 'clearly erroneous or contrary to law' standard of review." *Montanile v. Botticelli*, No. 1:08cv716, 2009 WL 2378684, *2 (E.D. Va. July 28, 2009) (citing *Jesselson v. Outlet Assocs. of Williamsburg, Ltd. P'ship*, 784 F. Supp. 1223, 1228 (E.D. Va. 1991)). Only if a Magistrate Judge's decision is "clearly erroneous or contrary to

---

[1] It appears that at some point it was contemplated that payment obligations were to be secured through what is referred to as a Sub-Guard insurance program, but this approach was eventually rejected. In this connection, Article XXIV of the Principal Contract states, "The Subcontractor shall furnish to Turner a performance bond in the amount of $ N/A and a separate payment bond in the amount of $ N/A."

law" may a District Court modify or set aside any portion of the decision. *Id.* (citing Fed. R. Civ. P. 72(a)); *See also* 28 U.S.C. § 636(b)(1)(A). A court's "finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Id.* (citing *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)). An order is contrary to law "when it fails to apply or misapplies relevant statutes, case law, or rules of procedure." *DeFazio v. Wallis*, 459 F. Supp. 2d 159, 163 (E.D.N.Y. 2006). Because the issue before the Court is to be decided as a matter of law, the Court reviews the Magistrate Judge's decision *de novo*. *See Felman Prod. v. Indus. Risk Insurers*, Civil Action 3:09-0481, 2010 U.S. Dist. LEXIS 74970 (S.D. W. Va. July 23, 2010) ("[F]or questions of law, there is no practical difference between review under Rule 72(a)'s 'contrary to law' standard and [a] de novo standard.") (quoting *Powershare, Inc. v. Syntel, Inc.*, 597 F.3d 10, 15 (1st Cir. 2010)).

### III. Analysis

USFIC contends that the Magistrate Judge incorrectly denied its motion because Attard had agreed to waive its right to a jury for all disputes that arise out of the Subcontract and Attard did so knowingly and voluntarily. Central to this position is USFIC's claim that since its liability under the bond is determined by Jett's liability under the Subcontract, USFIC has the right to "stand in the shoes" of Jett and assert against Attard any defense or rights that Jett could have asserted against Attard with respect to any dispute under the Subcontract.

Attard, on the other hand, contends that the jury waiver is, in effect, limited to Jett and Attard. Moreover, Attard argues that a jury waiver does not constitute a defense

3

to liability on the part of Jett and therefore is not assertable by USFIC under the "stepping into the shoes" doctrine pertaining to sureties. Additionally, Attard argues that there is a strong public policy against jury waivers that mitigates against extending that doctrine to a waiver of Attard's constitutional right to a jury trial absent an explicit agreement by Attard that its waiver extends beyond its claims directly against Jett under the Subcontract.

First, it is clear that only Attard and Jett are parties to the jury waiver, as to the Subcontract itself. *See* Subcontract at ¶ 1.3. Moreover, there is nothing in the Subcontract that would suggest that Jett and Attard necessarily intended or contemplated that the jury waiver was for the benefit of a surety or, more broadly, that the Subcontract would be incorporated into any collateral or related undertakings. In fact, there is nothing in the Subcontract that suggests that the contracting parties contemplated that a surety would issue payment bonds, although it is commonplace for such bonds to be issued and Attard no doubt had an expectation that Jett's performance would be secured in some fashion. Nor is there anything in USFIC's bond itself that explicitly references the jury waiver or the Subcontract or conditions USFIC's obligations under the bond on a jury waiver by a claimant. Nevertheless, it is also clear that Attard's claims against USFIC fall within the substantive scope of the jury waiver in the Subcontract, since they constitute a dispute "arising out of or related to performance of this Subcontract." The more difficult, and unresolved, issue is whether a surety may enforce a jury waiver in the principal's contract against a claimant. That issue has not been addressed in this Circuit and the Court has found only two reported cases explicitly dealing with the issue, each reaching a different conclusion. *Compare The Painting Company v. Walsh/Demaria Joint Venture III*, Nos.

2:09-cv-0183, 2L09-cv-0184, 2010 WL 1027424, *2 (S.D. Ohio March 12, 2010) ("By operation of law, the surety defendants have the same right, regardless of whether they were intended third party beneficiaries."), *with United States f/t/b Doten's Constr. v. JMG Excavating & Constr. Co.*, No. 03-134-P-S, 2005 WL 1412445, *4 (D. Me. May 24, 2005 ) ("I can only conclude that JMG's [the claimant's] claim against FFI [the surety] is not subject to the waiver established by the subcontract to which it is not a party.").

It has been long established that a surety's liability to a claimant on a bond is measured by the liability of the surety's principal to that claimant. *See Manson v. Rawlings*, 112 Va. 384, 388 (1911). For that reason, a surety, defending a suit on the principal's bonded obligation, stands in the principal's shoes and may assert those defenses to liability available to the principal. *See Centex Construction v. Acstar Insurance, Co.*, 448 F. Supp. 2d 697, 714 (E.D. Va. 2006).[2] These defenses assertable by a surety have been found to extend to lack of subject matter jurisdiction and such matters as the enforcement of venue selection clauses or arbitration clauses that strip a court of jurisdiction over a dispute, although the Fourth Circuit does not appear to have directly addressed this issue. *See, e.g., Blumenthal-Kahn Elec. Ltd. v. Am. Home Assur. Co.*, 236 F. Supp. 2d 575, 583 (E.D. Va. 2002) (allowing a surety to enforce an arbitration agreement); *U.S. ex rel. Coken Co., Inc. v. National Union Fire Ins. Co. of Pittsburgh,*

---

[2] The Court notes, however, that a surety's ability to raise all defenses of the principal is not absolute. *See Moore Bros. Co. v. Brown & Root*, 207 F.3d 717, 723-24 (4th Cir. 2000) (finding that a payment bond surety is not entitled to assert "pay when paid" defense contained in underlying construction contract when a subcontractor makes a claim under the payment bond); *United States f/u/b Acoustical Concepts v. Travelers Cas. & Sur. Co. of Am.*, 635 F. Supp. 2d 434, 442 (E.D.Va.2009) (holding that a surety on Miller Act payment bond not entitled to assert "set-off" defense of principal arising from unrelated projects); *See also* Restatement (Third) of Suretyship & Guaranty, § 34 (describing that generally, a surety cannot assert personal defenses of the principal).

*PA*, No. Civ. 103CV00222, 2003 WL 22937731, at *1 n.1 (M.D.N.C. Dec. 2, 2003) ("Though Defendant Sureties were not parties to the contract between Coken and Clark, they are entitled to invoke the forum selection provisions in that agreement.").

In support of its contention that it has the power to enforce the jury waiver, USFIC relies heavily on those cases in which courts have allowed a surety to enforce an arbitration provision in its principal's contract with a claimant. *See U.S. for Use and Benefit of Air-Con, Inc. v. Al-Con Development Corp.*, 271 F.2d 904 (4th Cir. 1959) (permitting a surety to enforce an arbitration clause contained in the contract between the claimant and the bond principal); *Blumenthal-Kahn.*, 236 F. Supp. 2d at 583. In this regard, USFIC argues with some force that there is no significant difference between enforcing an arbitration clause and a jury waiver since an arbitration clause necessarily gives up not only a jury but a court trial as well. *See Snowden v. CheckPoint Check Cashing*, 290 F.3d. 631, 638 (4th Cir. 2002) ("The loss of a right to a jury trial is a necessary and fairly obvious consequence of an agreement to arbitrate.") (*quoting Sydnor v. Conseco Fin. Servs. Corp.*, 252 F.3d 302, 307 (4th Cir. 2001)). In response, Attard first points out that it is not suing USFIC under the Subcontract, but rather is suing to enforce USFIC's independent obligations created by the Bonds. Attard also points out that the justification for permitting a surety to assert its principal's defenses is derived from and is limited to matters that relate to the principal's liability to the claimant, and not to other rights, such as a jury waiver, that do not constitute a defense to liability. But Attard's principal argument is that because the strong federal policy favoring arbitration is inapplicable in this case, its right to a jury guaranteed by the Seventh Amendment should

not be deemed waived based on what is contends is a limited and insufficient waiver in the Subcontract.

The Court concludes that USFIC does not have the right to enforce against Attard the jury waiver provision in the Subcontract. First, the justification for a surety to "stand in the shoes" of its principal diminishes when the principal's right to be enforced is not related to the principal's liability to the claimant, but to the process or procedure relating to the adjudication of that liability. Second, while USFIC is correct that a jury waiver is subsumed within the enforcement of an arbitration clause, the question reduces to whether a jury waiver should be enforced in the absence of an applicable arbitration clause, as in this case.[3] Those cases that have enforced arbitration provisions, and their concomitant waiver of a trial and a jury, are driven by the strong federal policy in favor of arbitration. See *Blumenthal*, 236 F. Supp. 2d. at 579 ("[A]s a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability.") (quoting *Am. Recovery Corp. v. Computerized Thermal Imaging, Inc.*, 96 F.3d 88, 92 (4th Cir. 1996)).[4]

---

[3] The Subcontract does contain an arbitration provision, but it applies only to disputes under $30,000. *See* Subcontract, at Article 6.2.

[4] In *Blumenthal*, several of the parties to the relevant contracts containing an arbitration clause were impleaded into that litigation, including the surety's principal, and this Court also concluded that unless the surety could enforce the arbitration provision, the provision would be "rendered meaningless," since any litigation would effectively be based on the same facts and be inherently inseparable from any claims the subcontractor brought against the principal. *Blumenthal*, 236 F. Supp. 2d at 583. The Court also pointed out the inequity of a subcontractor relying on a subcontract for the substance of a suit, while leaving out disfavored provisions of the subcontract.

7

For that reason, the strong federal policy that justifies sweeping away a right to a jury through the enforcement of an arbitration clause disappears in the absence of an arbitration clause; and the strong federal policy against jury waivers operates free of any such countervailing policy. Third, in assessing whether there has been a jury waiver with respect to a given dispute, "'courts indulge every reasonable presumption against waiver' of fundamental constitutional rights and . . . we do not presume acquiescence in the loss of fundamental rights." *Johnson v. Zerbst,* 304 U.S. 458, 464 (1938) (quoting *Aetna Insurance Co. v. Kennedy,* 301 U.S. 389, 393 (1937)). *See also Leasing Service v. Crane,* 804 F.2d 828, 832 (4th Cir. 1986) ("Where waiver is claimed under a contract executed before litigation is contemplated, we agree with those courts that have held that the party seeking enforcement of the waiver must prove that consent was both voluntary and informed."). Virginia courts have also adopted this test. *See Fairfax Co. of Va., LLC v. Samson Realty, LLC,* 74 Va. Cir. 141, 145 (Va. Cir. Ct. 2007) ("[T]his court also adopts the knowing and voluntary waiver test . . . . and place[s] the burden on the party seeking to be relieved from the effect of such a contractual provision.").

Here, Attard's jury waiver does not constitute a substantive defense to Jett's liability to Attard, but merely restricts the fact finding function to the Court. For this reason, the core justification for the "stepping in the shoes" doctrine is absent with respect to jury waivers.[5] With that core justification absent or diminished, the doctrine is

---

[5] Courts have concluded that a party cannot ignore a jury waiver in a contract while suing under the contract to enforce other provisions of that contract, even when claimed against a non-signatory to that contract. *See Mowbray v. Zumot,* 536 F. Supp. 2d 617, 620 (D.Md. 2008) ((citing *Perry v. Scruggs,* 17 Fed. Appx. 81, 91 (4th Cir. 2001) ("A person may not simultaneously bring a claim under a contract and repudiate a jury waiver clause in the same contract.")). The Court concludes in this case, however, that such a theory of estoppel is inapplicable since Attard is not suing USFIC under the Subcontract, but under

8

simply insufficient to displace or defeat the strong federal policy against jury waivers, even were that doctrine to extend to a right such as a jury waiver that does not relate to the liability of the principal. For these reasons, the jury waiver's enforceability by USFIC depends entirely on whether it constitutes a knowing and voluntary waiver of a jury not only against Jett, but against Jett's surety. As the Magistrate Judge noted, the Subcontract does not contractually require the posting of a bond and the text of the jury waiver in the Subcontract does not explicitly waive the right to a jury trial in a suit on a bond, or to any dispute with a non-party to the Subcontract. There is no other evidence concerning the parties' intentions with respect to the scope or application of the jury waiver and the text of that waiver, within the context of the Subcontract as a whole, does not establish that Attard entered into a knowing and voluntary jury waiver with respect to its claims against USFIC under the Bond.

IV. **Conclusion**

For these reasons, this Court concludes that the Magistrate Judge's decision to deny USFIC's motion to strike jury demand was not clearly erroneous or contrary to law, and USFIC's objections will be overruled.

---

the Bonds. Even though USFIC's liability is defined by the Subcontract, the Bonds represent independent, separate and distinct legal obligations and are not incorporated into the Subcontract. *See First Virginia Bank-Colonial v. Baker*, 225 Va. 72, 77 (1983) (*quoting* 74 Am. Jur. 2d Suretyship § 135 (1974) ("[A] creditor's right to proceed against the surety exists independently of his right to proceed against the principal."). For these reasons, the Court concludes that there is no estoppel that works against Attard with respect to the jury waiver independent of the "standing in the shoes" doctrine and any such estoppel conflates with the reach of USFIC's rights under the "standing in the shoes" doctrine.

An appropriate Order will issue.

/s/
Anthony J. Trenga
United States District Judge

Alexandria, Virginia
August 5, 2010