IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| ATTARD INDUSTRIES, INC., )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>UNITED STATES FIRE INSURANCE CO.)<br>)<br>Defendant. )<br>_____) | No. 1:10cv121 (AJT/TRJ) |

## MEMORANDUM OPINION

On August 27, 2010, following a four day trial, a jury returned a verdict in favor of Plaintiff Attard Industries, Inc. ("Attard") against Defendant United States Fire Insurance Co. ("USFIC") in the amount of $1,872,430 plus prejudgment interest running from January 18, 2007. Judgment in that amount was entered on September 15, 2010 (Doc. No. 163). In response, USFIC filed a (1) Renewed Motion for Judgment as a Matter of Law; (2) Motion for a New Trial; and (3) Motion to Alter or Amend the Judgment (Doc. No. 168), in which it challenges the legal sufficiency of the verdict and the date from which the jury awarded prejudgment interest. For the reasons discussed below, the Court concludes that as a matter of law prejudgment interest against a surety, such as USFIC, cannot accrue before a beneficiary, such as Attard, makes its first demand for payment under a surety bond, which occurred in this case on October 20, 2009. The Court will accordingly amend the judgment entered on the verdict but otherwise denies USFIC's motions.

1

# I. BACKGROUND

Turner Construction, Inc. ("Turner") received a prime contract on a construction project at the Washington Dulles International Airport known as the Dulles Airport Package 6 Main Termination People Mover Station (the "Project"). On December 16, 2002, Turner entered into a subcontract with Jett Mechanical, Inc. ("Jett") to provide all mechanical and plumbing work on the Project (the "Principal Contract"). On January 21, 2003, Jett, in turn, entered into a sub-subcontract with Attard for Attard to provide labor and materials on the Project (the "Subcontract"). Following the execution of the Subcontract, Jett arranged for USFIC to issue, as surety, payment bonds with respect to Jett's performance under the Subcontract (the "Bonds"). In June 2008, after disputes over unpaid invoices went unresolved, Jett terminated Attard under the Subcontract. On October 20, 2009, Attard filed with USFIC a formal claim and demand under the Bonds for payment of certain outstanding invoices that Attard had issued to Jett. USFIC refused payment and on February 12, 2010, Attard filed this action against USFIC alleging USFIC breached its payment obligations under the Bonds.

The case was tried before a jury from August 23, 2010 to August 27, 2010. A total of approximately $3.4 million in damages was submitted to the jury for its consideration, $1.7 million of which related to a change order known as Change Notice 331 ("CN 331").[1] On August 27, 2010, the jury returned a general verdict in favor of Attard and against USFIC in the amount of $1,872,430 plus prejudgment interest running from January 18, 2007 (Doc. No. 146). Judgment was subsequently entered in that

---

[1] More specifically, total claims in the amount of $3,468,598 were submitted to the jury, of which CN 331 comprised $1,667,485. During trial, the Court granted USFIC's motion for entry of judgment as a matter of law as to Attard's claim based on Change Notice 489 ("CN 489"); and denied its motion as to Attard's claim based on CN 331.

amount with prejudgment interest at the rate of 6% per annum running from January 18, 2007 to the entry date of judgment (Doc. No. 163). Specifically at issue in USFIC's post-trial motions is the Court's submission to the jury of CN 331 and the date from which the jury awarded prejudgment interest.

## II. STANDARD OF REVIEW

Jury verdicts are entitled to the "utmost respect." *Szedlock v. Tenet*, 139 F. Supp. 2d 725, 729 (E.D. Va. 2001), *aff'd* 61 F. App'x 88 (4th Cir. 2003). Nevertheless, the Court must grant judgment as a matter of law if there is no legally sufficient evidentiary basis for a reasonable jury to find for the party on that issue. Fed. R. Civ. P. 50(a)(1); *see also Price v. City of Charlotte*, 93 F.3d 1241, 1250 (4th Cir. 1996). The Court must view the evidence and draw all reasonable inferences in the light most favorable to the nonmoving party. *Lack v. Wal-Mart Stores, Inc.*, 240 F.3d 255, 259 (4th Cir. 2001). Courts may not substitute their judgment for that of the jury or make credibility determinations. *Price*, 93 F.3d at 1249. If there is evidence on which a reasonable jury could return a verdict in favor of the nonmoving party, that verdict must be upheld. *Id.* at 1249-50.

The standard governing motions for a new trial under Rule 59 is significantly different. On a Rule 59(a) motion, a district court may set aside the jury's verdict and grant a new trial only if "(1) the verdict is against the clear weight of the evidence, or (2) is based upon evidence which is false, or (3) will result in a miscarriage of justice even though there may be substantial evidence which would prevent the direction of a verdict." *Atlas Food Sys. & Servs. Inc. v. Crane Nat'l Vendors, Inc.*, 99 F.3d 587, 594 (4th Cir.

1996). On a Rule 59 motion, courts may make credibility judgments in determining the clear weight of the evidence. *Knussman v. Maryland*, 272 F.3d 625, 647 (4th Cir. 2001).

Rule 59(e), pursuant to which USIFC challenges the date from which the jury awarded prejudgment interest, does not itself provide a standard for relief. The Fourth Circuit, however, has recognized three grounds for amending an earlier judgment: (1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice. *Pacific Ins. Co. v. American Nat. Fire Ins. Co.*, 148 F.3d 396, 403 (4th Cir. 1998). "[T]he rule permits a court to correct its own errors, 'sparing the parties and the appellate courts the burden of unnecessary appellate proceedings.'" *Id.* (quoting *Russell v. Delco Remy Div. of Gen. Motors Corp.*, 51 F.3d 746, 479 (7th Cir. 1995)).

### III. ANALYSIS

#### A. Change Notice 331

USFIC argues that the Court must grant its Motion for Judgment as a Matter of Law because it demonstrated, through cross examination of Attard's witnesses and otherwise, the existence of discrepancies, falsities, or inflation in Attard's CN 331 claim for $1.7 million. In light of this evidence, USFIC argues that no reasonable jury could have concluded that Attard was entitled to recover on the entire amount claimed for CN 331. In the alternative, USFIC asks the Court to grant a new trial because even if there were legally sufficient evidence to allow the jury to consider CN 331 as part of Attard's damages, Attard's claim for the full amount of CN 331 was against the clear weight of the evidence, and the jury's $1.8 million verdict must have included a portion of what was claimed for CN 331. Attard argues that the verdict must be viewed as a whole and

4

the evidence was clearly legally sufficient to support a verdict of only approximately $1.8 million of the $3.4 million in claimed damages, particularly since out of the entire $3.4 million, USFIC challenged only the legal sufficiency of a portion of the $1.7 million in damages claimed for CN 331. For these same reasons, Attard also argues that the verdict cannot be deemed to be against the clear weight of the evidence.

The plaintiff has the burden of proving damages "with reasonable, but not absolute, certainty." *Oden v. Salch*, 237 Va. 525, 535 (1989).[2] Furthermore, "absolute certainty as to the amount of the damages is not essential when the existence of a loss has been established." *Pebble Bldg. Co. v. G.J. Hopkins, Inc.*, 223 Va. 188, 191 (1982) (quoting *Wyckoff Pipe & Creosoting Co. Inc., v. Saunders*, 175 Va. 512, 518-19 (1940)). The trier of fact may fix the amount of damages when the facts and circumstances permit an intelligent and probable estimate of damages. *See Nelson v. Commonwealth of Virginia*, 235 Va. 228, 251-52 (1988) (finding sufficient evidence for jury to draw inference of quantum based on the testimony of an employee charged with budgeting the project and the testimony of the company's principle in charge of the project).

The evidence presented at trial included expert and other testimony as well as exhibits, admitted without objection, that supported Attard's position that it was due the full amount it was claiming for CN 331. It was within the province of the jury to consider and weigh all of the evidence presented regarding Attard's claims with respect to CN 331, including the credibility of witnesses and the weight to be given to evidence of inflated or inaccurate calculations or claims. *See Nelson*, 235 Va. at 249-51 (finding

---

[2]Because this Court's jurisdiction is based on diversity of citizenship, the burden of proof with respect to damages is determined by Virginia law. *See Stewart Title Guar. Co. v. Virginia Commonwealth Title Co.*, 64 F.3d 659 (4th Cir. 1995) (applying Virginia burden of proof rules for damages in a contract action).

5

trial court correctly submitted claims to the jury for determination of quantum of damages where there was conflicting evidence regarding the proper multiplier used to calculate fees, evidence that certain labor estimates were based on faulty premises and assumptions, and evidence that certain hours were improperly included in the actual hours worked); *Fruit Growers Exp. Co. v. Hulfish*, 173 Va. 27, 32 (1939) ("juries are the triers of facts and determine the credibility of witnesses and the weight to be given their testimony. Their findings of fact are entitled to great respect when supported by credible evidence.").

Viewing the evidence in the light most favorable to Attard, the Court concludes that there was sufficient facts and circumstances to permit the jury to determine the quantum of damages with reasonable certainty; and USFIC's Rule 50 motion must be denied. In addition, the Court concludes based on all the evidence that a new trial is not warranted in this case; and USFIC's Rule 59(a) motion will be denied.

### B. Prejudgment Interest

USFIC contends that the evidence at trial was insufficient to support the award of prejudgment interest from January 18, 2007 and that, in any event, prejudgment interest should not begin to run against a surety until at least an initial demand for payment is made on the surety. For these reasons, USFIC claims that the jury's award of prejudgment interest against USFIC running from January 18, 2007 must be vacated and a new trial ordered on this issue, or alternatively, that the Court must amend the judgment to reflect an appropriate date on which prejudgment interest may begin to run. Attard argues that the jury's award of prejudgment interest comports with Virginia law and is supported by the evidence presented at trial.

In an action based on diversity, as in this case, Virginia law governs a party's entitlement to prejudgment interest. *Continental Ins. Co. v. City of Virginia Beach*, 908 F. Supp. 341, 349 (E.D. Va. 1995) (citing *United States v. Dollar Rent A Car Sys., Inc.*, 702 F.2d 938, 940-41 (4th Cir. 1983)). Virginia law provides that "[i]n any ... action at law ... the verdict of the jury ... may provide for interest on any principle sum awarded, or any part thereof, and fix the period at which interest shall commence." Va. Code § 8.01-382. The award of prejudgment interest is, therefore, generally a matter within the discretion of the jury. *See Al-Abood v. Elshamari*, 217 F.3d 225, 236 n. 7 (4th Cir. 2000). In this case, the issue of prejudgment interest was properly submitted to the jury, which was authorized to find, and did find, that prejudgment interest should be awarded to Attard. There is sufficient evidence to support that judgment; and the Court concludes that the jury's decision to find liability for prejudgment interest, aside from the accrual date, should not be set aside. The more difficult issue is whether as a matter of law, prejudgment interest can be awarded against a surety before demand for payment was made against it, as the jury concluded here; and if not, whether there should be a new trial in order to allow the jury to set the date from which prejudgment interest runs based on appropriate jury instructions or whether the Court can set the accrual date.

Although Virginia state courts and the Fourth Circuit have not yet addressed these prejudgment interest issues, other federal courts have found that a surety may only be liable for prejudgment interest from the date it receives demand for payment from the beneficiary.[3] For example, the Second Circuit concluded that "in general, interest, as

---

[3] Attard argues that the decision of the Supreme Court of Appeals of Virginia in *Burton v. Frank A. Seifert Plaintiff Relief Co.*, 108 Va. 338 (1908), requires this Court to affirm the jury's award of prejudgment interest. In *Burton*, the jury returned a verdict in favor of

against the surety, begins to run... only from the time of a demand upon the surety, or notice to him to pay, or by suit, or by something equivalent to demand or notice." *United States v. Quinn*, 122 F.65, 66 (2d Cir. 1903) (*per curiam*). Other courts since *Quinn* have also concluded that a surety must receive demand before the surety becomes liable for prejudgment interest. *American Auto Ins. Co. v. United States*, 269 F.2d 406, 412 (1st Cir. 1959) ("[I]nterest can be charged against the surety only from the date of demand on it, because until then the surety is not in default."); *Golden West Constr. Co. v. United States*, 304 F.2d 753, 757 (10th Cir. 1962) ("[T]he prevailing rule require[es] a demand for payment upon the surety in order to activate interest liability."); *United States v. Casle Corp.*, 895 F. Supp. 420, 429 (D. Conn. 1995) (same). Although some of the cases cited arose under federal law, the courts were guided by state law on the question of prejudgment interest. *See also United States for Use of Baltimore Cooperage Co. v. McCay*, 28 F.2d 777, 781 (D. Md. 1928) (finding under the federal Materialmen's Act that a "surety on a contractor's bond for such work as is here involved is not in default until demand for payment is made upon him, and hence until that time is not chargeable with interest"); *United States to Use of Forsberg v. Fleischmann Const. Co.*, 298 F. 320 (E.D. Va. 1923) ("it is not unfair [in an action against a contractor and its surety] to fix the commencement of the interest as of the date of the filing of the original suit").

The Court concludes that the rule described above, prohibiting an award of prejudgment interest against a surety before a demand for payment is made, is also the

---

the subcontractor that included an award of prejudgment interest from the time of the general contractor's breach, not from the time the subcontractor made demand upon or brought suit under the bond. However, the Supreme Court of Appeals of Virginia did not consider or decide the proper accrual date for prejudgment interest. The case, therefore, does not provide any binding precedent or even guidance on the issue of prejudgment interest.

most appropriate under Virginia's prejudgment interest statute. Under Virginia law, an award of prejudgment interest rests on notions of fairness arising from the plaintiff's loss and the defendant's obligation for that loss. In that connection, it is intended to compensate the plaintiff, not penalize the defendant. *Hardey v. Metzger*, 2008 WL 3895686, *9 (No. 2628-07-4) (Va. App. Aug. 26, 2008) (quoting *City of Milwaukee v. Cement Div., Nat'l Gypsum Co.*, 515 U.S. 189, 197 (1995)) ("Prejudgment interest 'is not awarded as a penalty; it is merely an element of just compensation'"). It is also to be awarded against a defendant relative to the time from which that defendant caused or failed to act to prevent the loss, that is, from the time the obligation arose. *Marks v. Sanzo*, 231 Va. 350, 356 (1986) ("award of prejudgment interest is to compensate Plaintiff for the loss sustained by not receiving the amount to which he was entitled at the time he was entitled to receive it"). When applying these notions to a claim against a surety, the Court concludes that as a matter of law an award of prejudgment interest cannot be assessed earlier than the date on which a demand for payment has been made against the surety.

As Attard has repeatedly pointed out, its claim against USFIC is premised, not on the Subcontract, but rather, on USFIC's independent obligations created by the Bonds. *See* Attard Industries, Inc's Opposition to United States Fire Insurance Company's Motion to Strike Demand for a Jury Trial 9, June 4, 2010 (Doc. No. 36) ("The present matter is a suit arising under the two payment bonds issued by US Fire. . . There is a debt due to Attard under the terms of the payment bonds (the amount of payment bond claim submitted by Attard to US Fire) ... Attard's pending lawsuit against US Fire is an independent action from Attard's claim against Jett for breach of the Subcontract"). In

such a circumstance, to impose prejudgment interest on a surety before it has incurred an obligation to pay a beneficiary would essentially penalize the surety who has had no opportunity to discharge its obligation. *See American Auto*, 269 F.2d at 412 (finding that a plaintiff who choose to look to the principal rather than notify the surety precluded the surety from stopping the accumulation of interest). This is particularly the case within the context of suretyship, where a surety issuing a bond, such as USFIC, is typically "not charged with the duty of ascertaining whether the contractor has been paying for material and labor as furnished, unless and until requested to see to it that such claims are paid." *McCay*, 28 F.2d at 781; *see also London & Lancashire Indemnity Co. of America v. Smoot*, 287 F.952, 957 (C.A.D.C. 1923) ("We do not think it became the duty of the surety to ascertain whether or not the contractor was paying for material and labor as it was furnished from time to time").[4]

Other considerations also weigh in favor of such a rule. While the surety has no control over when a demand is made, a beneficiary does. In this case, the record is that Attard did not make formal demand for payment on USFIC until October 20, 2009. But as Attard claimed at trial, certain payments were "due and payable" under the Subcontract to Attard long before that date.[5] Until Attard made a demand on USFIC, USFIC had no contractual duty to satisfy any obligations on its part under the Bonds. *See*

---

[4] The Court has found nothing under Virginia law that would impose such a duty on sureties.

[5] While Attard may have had good reasons to delay making a demand on USFIC, Attard's ability to make a demand on USFIC is underscored by the rule, recognized under Virginia law in this Circuit, that a payment bond surety is not entitled to assert against a subcontractor making a claim under that bond a "pay when paid" defense based on the terms of an underlying construction contract. *See Moore Bros. Co. v. Brown & Root*, 207 F.3d 717, 723-24 (4th Cir. 2000).

10

*American Auto,* 269 F.2d at 412 (finding plaintiff's three month delay in notifying the surety, while reasonable, was at plaintiff's own risk and foreclosed the possibility of the surety being charged with interest before the date of notification). Permitting the assessment of prejudgment interest against a surety before demand for payment is made would amount to the imposition of a penalty because it would be based on conduct over which the surety had no control or losses it had no opportunity to prevent. In effect, such a rule would require a surety, in order to minimize its exposure for prejudgment interest under a payment bond, to monitor its principal's obligations to a beneficiary and volunteer payments in the absence of a demand. For the above reasons, the Court concludes that as a matter of law, prejudgment interest may not be assessed against USFIC with respect to its payment obligations under the Bonds until the date of Attard's demand, October 20, 2009, at the earliest. In this regard, the jury clearly was of the view that an award of interest at a relatively early point in time was appropriate; and the Court, respecting that judgment, concludes that an amendment to the judgment to accrue interest as of October 20, 2009, rather than a new trial, is the most appropriate resolution of this issue, particularly given that it is consistent with USFIC's alternative request for relief.[6]

## IV. CONCLUSION

For the above stated reasons, Defendant United States Fire Insurance Company's Motion to Alter or Amend the Judgment (Doc. No. 168) is GRANTED, and the judgment entered in this case will be amended to accrue prejudgment interest as of October 20,

---

[6] During the hearing on October 22, 2010, USFIC conceded that the Court was authorized to set an accrual date for prejudgment interest supported by the evidence, rather than order a new trial on that issue.

2009; and Defendant United States Fire Insurance Company's Renewed Motion for Judgment as a Matter of Law and Motion for a New Trial (Doc. No. 168) are DENIED.

An appropriate Order will issue.

/s/
Anthony J. Trenga
United States District Judge

Alexandria, Virginia
November 9, 2010